MARY JANE MARINOVICH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Marinovich v. Commissioner
Docket Nos. 33856-83, 11659-84.
United States Tax Court
T.C. Memo 1985-432; 1985 Tax Ct. Memo LEXIS 199; 50 T.C.M. (CCH) 839; T.C.M. (RIA) 85432; August 19, 1985. Mary Jane Marinovich, pro se. Debra A. Bowe, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) [1] *201 Sec. 6653(a)(2)
1981
$6,907.00
$345.35
[1]
1982
574.00
29.00
n2
The issues are (1) whether petitioner is entitled to charitable contribution deductions for amounts purportedly contributed to the Universal Life Church, Inc., and (2) whether petitioner is liable for additions to tax under sections 6653(a)(1) and 6653(a)(2). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, Mary Jane Marinovich, resided in Nevada City, Calif., when the petitions were filed herein. During the years in issue, petitioner was employed as a nurse by the Veterans Administration and earned wages totalling $17,217.96 and $13,314.90 in 1981 and 1982, respectively. [2]
On November 16, 1981, petitioner was granted a charter by the Universal Life Church, Inc., Modesto, Calif., (herein "ULC Charter No. 48814"). Petitioner and Nell T. Vernier (herein "Vernier"), an individual who resided with petitioner and was claimed as a dependent *202 on petitioner's 1982 Federal income tax return, were two of the three directors of ULC Charter No. 48814. [3] During the years in issue, ULC Charter No. 48814 conducted essentially no activities. In 1981, petitioner opened and transferred $20,000 to an account in the name of ULC Charter No. 48814 at the Golden State Sanwa Bank in Culver City, Calif. In 1982, funds from the Golden State Sanwa Bank account were transferred to accounts maintained in the name of ULC Charter No. 48814 at Capital Preservation, Palo Alto, Calif., and at Security Pacific National Bank, Nevada City, Calif. (such accounts are herein collectively referred to as the "ULC accounts"). In 1982, petitioner also transferred an additional $3,000 from her personal account to the Security Pacific National Bank account. Petitioner and Vernier each held signatory authority over the ULC accounts and their residence address was given as the address of ULC Charter No. *203 48814 for the ULC accounts. Petitioner used funds in the ULC accounts to pay personal expenses, including mortgage and property tax payments on her residence, and payments toward the purchase of such items as shirts, books, and a cat. On her Federal income tax returns for 1981 and 1982, petitioner deducted $19,559 and $3,441, respectively, as charitable contributions to ULC Charter No. 48814. [4] In his notices of deficiency, respondent disallowed the claimed deductions for charitable contributions and imposed additions to tax under sections 6653(a)(1) and 6653(a)(2) for both years. OPINION The first issue is whether petitioner is entitled to deductions under section 170 *204 for amounts claimed as charitable contributions to ULC Charter No. 48814. Section 170(c) defines charitable contribution as follows: (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * * (2) A corporation, trust, or community chest, fund, or foundation-- * * * (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * * (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * * The burden of proving entitlement to a deduction is on petitioner. ; Rule 142(a). Thus, petitioner must show that all requirements of section 170 have been satisfied. After considering the record herein, we conclude that petitioner has failed to carry her burden of proof. Section 170(a) requires that a charitable contribution actually be made within the taxable year for which a deduction is sought. It is well established that where a taxpayer retains dominion and control over the purportedly contributed property, no charitable *205 contribution or gift has been made. See e.g., ; , and cases cited therein, on appeal (9th Cir., June 25, 1984). Since, by means of her signatory powers, petitioner retained control over the funds deposited in the ULC accounts, it is clear that she did not make any charitable contributions. Furthermore, petitioner has not established that ULC Charter No. 48814 was both organized and operated exclusively for exempt purposes as required by section 170(c)(2)(B). The only evidence in the record relating to the organization of ULC Charter No. 48814 was the minutes from a meeting of its board of directors, which indicated that the mission of ULC Charter No. 48814 was "to help older women to cope in a society [the directors] feel oppresses and discriminates against them." However, petitioner failed to prove that ULC Charter No. 48814 was organized to further that purpose or that its purposes were limited to exempt ones. Similarly, petitioner has failed to prove that ULC Charter No. 48814 was operated exclusively for exempt purposes. Petitioner introduced no documentary *206 evidence and only a minimal amount of testimony regarding the operation of ULC Charter No. 48814 during the years in issue. Vernier testified that no church activity, other than a "very little" amount of counseling, took place during the years in issue. Finally, it is clear that some part of the net earnings of UCL Charter No. 48814 inured to petitioner's benefit, within the meaning of section 170(c)(2)(C). Petitioner used funds from the ULC accounts to pay personal expenses, including the mortgage and property tax payments on her residence and the purchase of such items as shirts, books, and a cat. Furthermore, she did not explain other withdrawals of cash from the ULC accounts. We therefore find that funds from the ULC accounts inured to petitioner's personal benefit. Based on the foregoing, we conclude that petitioner has failed to meet her burden of proof with respect to charitable contribution deductions for amounts purportedly donated to ULC Charter No. 48814 and thus is not entitled to any deductions under section 170. The second issue is whether petitioner is liable for additions to tax pursuant to sections 6653(a)(1) and 6653(a)(2). Section 6653(a)(1) provides for *207 an addition to tax of five percent of any underpayment that is due to negligence or intentional disregard of rules or regulations. Petitioner bears the burden of proof on this issue. ; Rule 142(a). After considering the record, we conclude that petitioner has failed to carry her burden. Petitioner offered no evidence other than her meritless contention that she acted in good faith. Petitioner, who was well educated, could not have reasonably believed that she could claim charitable contribution deductions for amounts which were deposited in bank accounts under her control and used for her personal benefit. We therefore sustain respondent's determination of additions to tax under section 6653(a)(1). Section 6653(a)(2) provides for an addition to tax in an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment due to negligence or intentional disregard of rules and regulations for the period beginning on the last day for payment of the underpayment. Since we have found that petitioner's entire underpayment was attributable to her charitable contribution deductions, *208 we also conclude for purposes of section 6653(a)(2) that all of petitioner's underpayment was attributable to negligence and therefore sustain the additions to tax imposed thereunder. [5]
To reflect the foregoing, Decisions will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. Fifty percent of the interest due on $6,907.00. In 1981, petitioner also recognized capital gain from the sale of real property and reported $39,118 of income before deductions on her Federal income tax return for that year.
[2]↩ Fifty percent of the interest due on $574.00.
3. Susan Herzog, petitioner's friend and the third director, remained in Culver City, Calif., when petitioner and ULC Charter No. 48814 relocated to Nevada City, Calif., in 1982, and played no further role in the activities of ULC Charter No. 48814.↩
4. Petitioner's claimed charitable contribution deduction for 1981 was limited to $19,559 by sec. 170(b) which, in general, limits deductions for any charitable contribution to 50 percent of the taxpayer's adjusted gross income. In 1982, petitioner claimed deductions for charitable contributions in the amount of $3,441 of which $3,000 represented the funds transferred to the Security Pacific National Bank account in that year and $441 represented the carryover of excess contribution under sec. 170(d).↩
5. We have had before us other cases in which taxpayers attempted unsuccessfully to claim deductions for charitable contributions to the Universal Life Church, Inc. under arrangements similar to those used by petitioner here. See e.g., , , and . We are outraged that unscrupulous persons who are not parties to these proceedings have encouraged and brainwashed taxpayers such as petitioner to claim deductions to which they were clearly not entitled.↩