JACK M. GOOKIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gookin v. Commissioner
Docket Nos. 15788-83, 23987-83, 5176-84.
United States Tax Court
T.C. Memo 1985-502; 1985 Tax Ct. Memo LEXIS 132; 50 T.C.M. (CCH) 1163; T.C.M. (RIA) 85502; September 24, 1985. Jack M. Gookin, pro se. Debra Bowe, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In statutory notices of deficiency dated May 24, 1983 (for 1980 and 1981), and December 6, 1983 (for 1979), respondent determined deficiencies in petitioner's Federal income tax liabilities and additions to tax as follows: Additions to Tax
Year
Deficiencies
Section 6653(a) [1]
1979
$2,069
$103.00
1980
1,176
58.80
1981
1,213
[2] 60.65
*133 These cases were consolidated for trial by order of this Court dated December 18, 1984. After concessions, the remaining issues concern whether petitioner may deduct charitable contributions allegedly made to a charter organization of the Universal Life Church, whether petitioner is liable for the additions to tax set forth above, and whether damages should be awarded to the United States pursuant to section 6673. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner Jack M. Gookin ("petitioner") resided in West Pittsburg, California, when the petitions herein were filed. Petitioner timely filed his 1979, 1980, and 1981 Federal income tax returns. Petitioner filed amended returns for 1980 and 1981 on May 20, 1982, and June 1, 1982, respectively. During the years in issue, petitioner was employed full time as an engineer by the State of California. On or about February 16, 1979, petitioner *134 obtained a charter agreement (number 27307) from the Universal Life Church, Inc., of Modesto, California (hereinafter referred to as "ULC Modesto"). Petitioner, his cousin, and his step-daughter were the sole members of the board of directors of the charter organization (hereinafter referred to as "the ULC"). In March 1979, petitioner opened both a checking account and a savings account at Crocker National Bank in Hayward, California, in the name of "ULC, Inc. Charter No. 27307" over which he alone had authority to withdraw funds. Petitioner also maintained a personal bank account at Crocker National Bank. During the years in issue, petitioner withdrew funds from his personal bank account and deposited those funds to the ULC checking account. Petitioner used funds withdrawn by him from the ULC checking account to pay his monthly rent, utility and telephone charges, health club dues, and other miscellaneous personal expenses. Petitioner did render charitable services. For example, he allowed a disabled friend to reside in his home rent-free and he offered advice and counsel to another friend with respect to her personal problems. Petitioner occasionally held religious discussions *135 in his home and was a frequent donor, primarily by means of funds drawn from the ULC checking account, to local charitable organizations, such as the March of Dimes, the Easter Seals Society, and some disabled veterans groups. On his Federal income tax returns for 1979, 1980 (as amended), and 1981 (as amended), petitioner reported his adjusted gross income and charitable contributions to the ULC in the following amounts: Adjusted
Charitable
Year
Gross Income
Contributions to the ULC
1979
$12,410
$7,270
1980
12,584
7,150
1981
14,393
7,196
Petitioner presented photocopies of cancelled checks drawn on his personal account and receipts issued by the ULC to substantiate that he made contributions to the ULC. Those receipts, however, were signed either by petitioner or his 12-year-old son. In addition, petitioner presented annual receipts issued by ULC Modesto, which purport to acknowledge petitioner's contributions to the ULC in amounts consistent with those claimed by petitioner on his Federal income tax returns for 1979, 1980, and 1981. Respondent disallowed the deductions claimed by petitioner for charitable contributions to the ULC. Additions *136 to tax for negligence were determined and respondent also advised petitioner that deductions for contributions to ULC charter organizations consistently had been disallowed by this and other courts. At trial held on June 26 and 27, 1985, respondent filed a written motion for damages pursuant to section 6673. OPINION Section 170 [3] generally allows deductions for charitable contributions where a taxpayer proves (1) that the contributions actually were made; (2) that the contributions were made to a qualified tax-exempt organization; and (3) that no part of the net earnings of the qualified tax-exempt organization inured to the taxpayer's personal benefit. Kalgaard v. Commissioner,764 F.2d 1322, 1323 (9th Cir. 1985), affg. a Memorandum Opinion of this Court; [4]Hall v. Commissioner,729 F.2d 632, 634 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; [5]Bell v. Commissioner, 85 T.C.     (Sept. 5, 1985). *137 Petitioner argues that he made charitable contributions to the ULC, which he considers to be a tax-exempt organization. [6] Respondent contends that petitioner never parted with control over the funds allegedly contributed; that therefore no contributions were made; that even if contributions were made, they were not made to a qualified tax-exempt organization; and third, that any contributions to the ULC by petitioner inured to his personal benefit. If petitioner's position were correct, he would have donated approximately one-half of his yearly adjusted gross income to the ULC during the years in issue. Contributions in that magnitude call for a credible explanation that petitioner has failed to provide. Although petitioner presented annual receipts issued by ULC Modesto to substantiate that he made contributions to the ULC, those receipts carry little weight, if any. The receipts were issued solely on the basis of information supplied to ULC Modesto by petitioner himself. In addition, the ULC receipts *138 that purport to acknowledge petitioner's individual donations (which were signed either by petitioner or his son) are totally lacking in credibility. In sum, even though petitioner may have been engaged in rendering charitable services to his friends and associates, he offered no reliable evidence that would support a finding that he actually made contributions to a qualified tax-exempt organization and that petitioner did not personally benefit from the alleged contributions. Petitioner argues that if he is not allowed the charitable deductions, he should be entitled to claim a parsonage allowance pursuant to section 107. [7] Section 107 allows "minister[s] of the gospel" to exclude from gross income the rental value of a home or the rental allowance paid to them by a church. Petitioner herein never included any income with respect thereto in his Federal income tax returns so he has no ground for claiming an exclusion. We therefore uphold respondent's disallowance of the deductions with respect to 1979, 1980, and 1981 for charitable contributions to the ULC, and we reject petitioner's contention that he is entitled to a parsonage allowance. *139 Respondent determined that additions to tax pursuant to sections 6653(a)(1) and 6653(a)(2) were applicable because petitioner negligently failed to pay his Federal income tax liabilities for the years in issue. Respondent's determinations of negligence are presumptively correct and will be upheld unless petitioner rebuts that presumption, which he failed to do. Larsen v. Commissioner,765 F.2d 939, 941 (9th Cir. 1985), affg. an order of this Court; Hall v. Commissioner,supra at 635. We sustain respondent's determinations of additions to tax under sections 6653(a)(1) and 6653(a)(2). The final issue for decision is whether damages should be awarded to the United States pursuant to section 6673. [8] Section 6673 provides for damages to be awarded to the United States in an amount up to $5,000 whenever it appears that a taxpayer has filed or maintained a petition in this Court primarily for delay or where a taxpayer's position in a proceeding in this Court is frivolous or groundless. *140 Petitioner argues that the imposition of damages under section 6673 is an unconstitutional infringement of his First Amendment right to petition the government. The United States Court of Appeals for the Ninth Circuit, to which an appeal in this case lies, recently determined that that precise argument was in itself "frivolous" and upheld the constitutionality of section 6673. Larsen v. Commissioner,supra at 941; see also Bell v. Commissioner,supra.
Respondent and this Court warned petitioner that deductions for charitable contributions to various charter organizations of ULC Modesto consistently had been disallowed and that damages had been awarded in many of those cases. Photocopies of those decisions were mailed to petitioner, and he was informed that respondent would seek damages herein if petitioner continued to pursue his wholly frivolous claim. Petitioner's position in these consolidated cases is entirely without merit. The maintenance of these cases in the face of overwhelming contrary authority and repeated warnings by respondent can lead only to the conclusion that these cases were maintained primarily for delay. We award damages *141 to the United States under the authority of section 6673 in the total amount of $4,000 in docket Nos. 15788-83, 23987-83, and 5176-84. Decisions will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue. ↩
2. Respondent additionally determined an amount equal to 50 percent of the interest due on the underpayments that are upheld by this Court for 1981. Sec. 6653(a)(2).↩
3. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- * * * (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * * (2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *; (C) no part of the net earnings of which inured to the benefit of any private shareholder or individual; * * * ↩
4. Kalgaard v. Commissioner,T.C. Memo. 1984-283↩. 5. Hall v. Commissioner,T.C. Memo. 1982-337↩.
6. We note that the Internal Revenue Service revoked the tax-exempt status of ULC Modesto on September 4, 1984. Announcement 84-90, 1984-36 I.R.B. 32↩ (1984).
7. SEC. 107. RENTAL VALUE OF PARSONAGES. In the case of a minister of the gospel, gross income does not include-- (1) the rental value of a home furnished to him as part of his compensation; or (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home.↩
8. Section 6673 provides: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax.↩