LOUIS PHILIP ZOLLO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zollo v. Commissioner
Docket No. 8821-83.
United States Tax Court
T.C. Memo 1986-60; 1986 Tax Ct. Memo LEXIS 550; 51 T.C.M. (CCH) 443; T.C.M. (RIA) 86060; February 10, 1986. *550 Held: Petitioner is not entitled to a charitable contribution deduction in excess of that allowed by respondent; petitioner is liable for an addition to tax under section 6653(a); and damages are awarded under section 6673. Louis Philip Zollo, pro se. Mary P. Hamilton, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION *551 WHITAKER, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1981 in the amount of $8,494 and additions to tax pursuant to section 6653(a)(1) [1] and (2) in the amounts of $424.70 plus 50 percent of the interest payable on an underpayment of $8,494. During trial and on brief, respondent also requested an award of damages pursuant to section 6673. The issues before us for decision are: (1) Whether petitioner is entitled to a deduction for charitable contributions of $25,230 allegedly made to the Universal Life Church, Inc.; (2) whether petitioner is liable for the additions to tax pursuant to section 6653(a)(1) and (2); and (3) whether an award of damages pursuant to section 6673 is appropriate. *552 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioner resided in Worcester, Massachusetts at the time his petition was filed. Petitioner holds Bachelor of Science and Masters degrees in business administration from Clark University. During the taxable year 1981, he was employed by Astra Pharmaceutical Products, Inc. as the director of materials and by Honeywell Information Systems Inc. as a manager of software development. On his 1981 Federal income tax return, petitioner reported wages of $46,904. His wife, Cheryl G. Zollo, was unemployed during 1981. [2]
On June 2, 1981 petitioner opened a bank account in the name "Universal Life Church, Inc." (ULC) on which he, his wife, and Robert A. LeClerc were authorized signators. The address of this purported ULC was petitioner's home. During 1981 checks totaling $21,810 drawn by petitioner on his personal checking and savings accounts and made payable *553 to ULC were deposited in this account. Throughout 1981, petitioner retained complete control over the ULC account. The extent of this control is evidenced by the fact that most, if not all, checks drawn on the account were deposited in petitioner's personal checking and savings accounts or were cashed by petitioner for his personal use. For example, from September 15 through December 1981, $10,210 from petitioner's personal accounts was deposited in the ULC account. During the same time period, checks drawn on the ULC account payable to petitioner totaled $8,875. There is no evidence that the Universal Life Church, Inc. of Modesto, California, which at this time was recognized by respondent as an exempt organization, authorized the opening of this account, had any control over it, or asserted any claim to funds deposited in the account. The statutory notice of deficiency disallowed deduction of petitioner's alleged contributions to ULC of $25,230. Petitioner argues that respondent has previously recognized ULC as a charitable organization and, therefore, deductions to that organization are deductible under section 170. The petition in this case was filed on April 23, 1983. *554 On January 18, 1984 respondent wrote petitioner advising him that alleged charitable contributions to the ULC in Modesto, California or a chapter of that church had been addressed by the Court numerous times and said cases had been decided in favor of the Government. In this letter respondent cited 24 such cases and enclosed copies of two opinions. Respondent further advised petitioner that he was considering requesting the imposition of damages under section 6673. Imposition of such damages was raised by respondent at the close of trial on May 3, 1984. In preparing for trial respondent made both formal and informal discovery requests on petitioner. Petitioner failed to substantively respond to these requests. Petitioner's position throughout discovery and trial preparation was that relevant books and records were in the hands of the ULC of Modesto, California and could not be provided to respondent. Consequently, respondent subpoenaed a number of banks at which petitioner had maintained accounts during 1981 for relevant records. Petitioner repeatedly objected to receipt into evidence of the bank records obtained pursuant to these subpoenae. OPINION The first issue for *555 decision is whether petitioner is entitled to deduct the amount of $25,230 designated as a charitable contribution to the ULC on his 1981 joint Federal income tax return. Section 170(c) allows a deduction for charitable contributions where the taxpayer establishes each of the following: (1) that the contributions were actually made; (2) that they were made to a qualified, tax-exempt organization; and (3) that no part of the net earnings of such organization inured to the taxpayer's personal benefit. Davis v. Commissioner,81 T.C. 806 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). [3]
The burden of proof is upon petitioner to establish his entitlement to a deduction under section 170 as such deductions are matters of legislative grace. Deputy v. du Pont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Welch v. Helvering,290 U.S. 111 (1933); *556 Rule 142(a). Petitioner has failed to satisfy his burden of proof as to each of the above requirements of section 170. It is well settled that where a taxpayer retains dominion and control as to the future disposition of purportedly contributed property, no charitable contribution has been made. Davis v. Commissioner,supra at 817. Petitioner did not part with control over any funds allegedly deposited into this bank account. He merely transferred them from his personal bank accounts to another account he controlled. Even if we found that petitioner actually made a gift, he has not met his burden of proving that the contributions were made to a proper donee. Petitioner maintains that "proof was offered and provided to the I.R.S. showing that the Universal Life Church, Inc. is an entity recognizable for tax purposes as being separate and distinct from the petitioner" and is a "tax exempt organization listed in the cumulative list of organizations published by the U.S. Government." Although the ULC of Modesto, California had tax-exempt status during 1981 [4], the record contains no evidence that petitioner made any donation to this organization. This Court *557 has repeatedly held that an exemption such as that granted to the Modesto, California organization is not a group exemption. Hall v. Commissioner,729 F.2d 632, 634 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Davis v. Commissioner,supra at 815; McGahen v. Commissioner,76 T.C. 468, 481 (1981), affd. without published opinion 720 F.2d 664 (3rd Cir. 1983); Basic Bible Church v. Commissioner,74 T.C. 846, 855-856 (1980), affd. sub nom. Granzow v. Commissioner,739 F.2d 265 (7th Cir. 1984). [5] The record contains no evidence that a local chapter of the Modesto ULC was ever authorized or established in petitioner's home. Even if such a chapter had been formed, petitioner would still be required to demonstrate that it was a tax-exempt organization. He has failed to do so. *558 Petitioner has also failed to satisfy the third prong for deductibility--providing proof that his ULC, if one existed, was operated exclusively for exempt purposes. The facts prove the contrary. An organization is not operated exclusively for exempt purposes if its net earnings inure in whole or in part to the benefit of any individual. Any net earnings of the ULC bank account opened by petitioner would inure solely to his benefit, given his complete control over the disposition of funds in that account. Petitioner asserts that receipts adequately substantiate his purported charitable contributions to ULC and his claimed deduction is, therefore, appropriate. The purported receipts were excluded from evidence as unreliable hearsay and were contradicted by bank records showing that petitioner retained control over, and personal use of, the funds in question. This Court has repeatedly held that such ULC receipts are not admissible. See Hall v. Commissioner,supra at 634-635; Kalgaard v. Commissioner,764 F.2d 1322 (9th Cir. 1985), affg. a Memorandum Opinion of this Court; Davis v. Commissioner,supra at 814-815. As the *559 receipts were not received in evidence, petitioner's reliance on them is misplaced. During trial and on brief, petitioner raised the argument that he is a duly ordained minister of the ULC and as such is entitled to benefits available to ordained ministers of church corporations pursuant to sections 107 and 119.[6] Petitioner argues that he received a housing allowance from the ULC to defray his expenses and in lieu of any compensation. This argument was apparently advanced to explain the flow of funds from the ULC account to petitioner's personal accounts. The charade that petitioner employed to generate purported charitable contributions must be examined in light of the practical facts of this case. No money or other assets existed to pay a housing allowance to petitioner before his purported "contributions." His transfer of funds to the ULC account in order to pay himself a housing allowance is not a deductible charitable contribution because the transfer was made "with the expectation of receiving a commensurate benefit [i.e., the housing allowance] in return * * *." Sedam v. United States,518 F.2d 242, 245 (7th Cir. 1975); Singer Co. v. United States,449 F.2d 413, 422-423 (Ct. Cl. 1971). *560 Further, the record does not support a finding that any local chapter existed at petitioner's home or that he was a member or minister of any ULC church. We find petitioner's belated contention that he received a housing allowance as a minister of ULC a totally spurious argument. Petitioner also contends that "the U.S. Tex Court does not have jurisdiction over religious matters as presented in this case and should not put itself in the position of judging what is or is not an acceptable religion or religious practice." Petitioner's theme of religious persecution is evident in his refusal to cooperate by providing respondent with any information or documents sought during discovery. Petitioner invoked the jurisdiction of this Court to determine his tax deficiency, or lack thereof. In determining whether he is entitled to the claimed charitable contributions, we have not been required to pass upon whether any rights under the First Amendment to the Constitution are violated. Nothing *561 affecting petitioner's personal beliefs or religious learnings are involved in this case. What is involved is petitioner's claim of a deduction for purported donations from his personal bank accounts to a ULC bank account he opened and retained control of. Requiring a taxpayer to show that an organization to which he claims to have made charitable contributions meets the requirements of section 170(c) is not in any way related to the protection afforded by the First Amendment. However, if in attempting to show what an organization meets the requirements of section 170(c) it is necessary to demonstrate the religious activities of that organization, such an incidental burden on religion is clearly permissible. See Hall v. Commissioner,729 F.2d 632, 635 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Unitary Mission Church v. Commissioner,74 T.C. 507, 514 (1980), affd. without published opinion 647 F.2d 163 (2nd Cir. 1981). In addition to the ULC contributions, petitioner claimed a deduction for cash contributions to other charities in the amount of $180. Respondent allowed $100 of this amount. Petitioner failed to submit *562 any evidence regarding this issue and we conclude that the excess claimed deduction for contributions to other charities must be disallowed. The next issue we must resolve is petitioner's liability for additions to tax under section 6653(a). Petitioner bears the burden of proof to show error in respondent's determination that such additions to tax are appropriate. Bixby v. Commissioner,58 T.C. 757 (1972); Rule 142(a). He presented no evidence to show that his underpayment of tax was not due to negligent behavior, and, to the contrary, much of his involvement with the ULC account apparently was designed to manufacture bogus tax deductions. Petitioner is an intelligent, educated individual who could not reasonably have believed that by shuffling income between bank accounts totally within his control he could generate charitable contribution deductions. Accordingly, we sustain respondent's determination that petitioner is liable for an addition to tax pursuant to section 6653(a)(1) and that the entire amount of petitioner's underpayment was due to negligence for purposes of section 6653(a)(2). [7]
*563 The final issue for decision is whether damages should be awarded to the United States pursuant to section 6673. This section provides for an award of damages in an amount up to $5,000 "[w]henever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless * * *." A review of the record herein convinces us that petitioner has abused the process of this Court and wasted its resources and those of respondent in bringing a case which is frivolous and groundless. Prior to trial, petitioner was advised that respondent intended to request damages under section 6673 and was provided with relevant case cites and opinions demonstrating the lack of merit in his arguments. He chose to proceed and must now bear the consequences of that choice. We award damages to the United States under section 6673 in the amount of $5,000. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The statutory notice of deficiency was addressed to both petitioner and Cheryl G. Zollo. However, Mrs. Zollo is not a petitioner in this proceeding.↩
3. See also Weaver v. Commissioner,T.C. Memo. 1985-473; Kent v. Commissioner,T.C. Memo. 1984-451; Johnson v. Commissioner,T.C. Memo. 1984-164; Leslie v. Commissioner,T.C. Memo. 1984-61↩.
4. The Internal Revenue Service has revoked its determination that the Universal Life Church, Inc. of Modesto, California was a qualified organization under sec. 170(c)(2). Announcement 84-90, 1984-36 I.R.B. 32↩ (Sept. 4, 1984).
5. See also Gaster v. Commissioner,T.C. Memo. 1984-590; Bradfield v. Commissioner,T.C. Memo. 1984-481; Hoskinson v. Commissioner,T.C. Memo. 1984-400↩.
6. Sec. 107 deals with exclusion from gross income by a minister of the gospel of the rental value of parsonages and sec. 119 deals with meals or lodging furnished for the convenience of the employer.↩
7. Sec. 6653(a)(2) is effective for calendar years beginning with 1981. Pub. L. 97-34, sec. 722(b)(1), 95 Stat. 342.↩